UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WARREN LOUIS PARÉ,

                Plaintiff,

    -against-                                         1:19-CV-0206 (LEK/DJS)

VALET PARK OF AMERICA, INC., *et al.*,

                Defendants.

---

## **DECISION AND ORDER**

### I.     INTRODUCTION

Pro se plaintiff Warren Louis Paré brings this suit for various violations of his civil rights under 42 U.S.C. §§ 1983, 1985, and 1986 against thirty-six miscellaneous defendants. Dkt. No. 1 ("Complaint"). Currently pending before the Court are motions to dismiss brought under Federal Rules of Civil Procedure ("FRCP") 12(b)(2), 12(b)(5), and 12(b)(6) by defendants the Goddard School, Officer William Edwards, James Tillotson, Andrew Crane, and Valet Park of America ("Valet Park") (collectively, "Defendants"). Dkt. Nos. 13 ("Goddard MTD"); 15 ("Edwards MTD")[1]; 18 ("Tillotson MTD"); 21 ("Crane MTD"); 38 ("Valet Park MTD"). Plaintiff opposes these motions. Dkt. Nos. 52 ("Response to Valet Park"); 53 ("Response to Edwards"); 54 ("Response to Goddard" and "Response to Crane"); 55 ("Response to Tillotson"). Valet Park and

---

[1] The Edwards MTD is styled on the docket and on its cover page as a "Motion for Summary Judgment." See Docket; Edwards MTD. However, two days after filing his motion, Edwards filed a replacement cover page referring to a motion to dismiss. Dkt. No. 16. Because of this, and because of the content of the Edwards MTD, the Court believes the reference to a summary judgment motion in the initial filing was an error and will treat Edwards' motion as a motion to dismiss.

Edwards filed replies. Dkt. Nos. 57 ("Valet Park Reply"); 58 ("Edwards Reply"). For the following reasons, the Court grants all of the motions and dismisses the case against Defendants.

## II. BACKGROUND

### A. The Complaint

Plaintiff's Complaint contains allegations against thirty-six defendants located in at least five states. Compl. at 1–8.[2] The allegations against most Defendants are described in no more than a paragraph and are often disjointed. Id. ¶¶ 3–47. For example, Plaintiff names the Backwater Bar & Grill in Canaan, New York as Defendant No. 29 because Plaintiff had plans to meet a potential landlord there before he decided the meeting would endanger his personal safety. Id. ¶ 37. Then, as Defendant No. 30, Plaintiff names a used auto parts company that "clearly was involved with co-conspirators in undermining [Plaintiff's] efforts to improve [his] vehicle . . . ." Id. ¶ 38. Even construed liberally, as the Court must when considering a complaint filed pro se, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), the Court has difficulty discerning a narrative arc from the Complaint's description of often unrelated grievances. Therefore, the Court describes here only the allegations relevant to the instant motions. As always, on a motion to dismiss, the Court assumes that the facts alleged in the complaint are true. Maddison v. Comfort Sys. USA (Syracuse), Inc., No. 17-CV-359, 2019 WL 4805328, at *1 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.).

---

[2] The Complaint contains numbered paragraphs starting only on page nine. See Compl. Therefore, the Court refers to page numbers when citing to any information found in pages one through eight of the Complaint and paragraph numbers for any information found after page eight.

### 1. Edwards and the Goddard School

In March 2018, Plaintiff was in Orange, Connecticut. Compl. ¶¶ 12–20. He bought a newspaper and stopped in a parking lot to read. Id. ¶ 14. Two unidentified police officers in a cruiser stopped, had Plaintiff get out of his car, and asked how he was doing. Id. After a short conversation, the officers left, without ever asking Plaintiff to leave. Id. However, a warrant was issued for Plaintiff's arrest for criminal trespass, eventually leading to Plaintiff's arrest in late July 2018. Id. ¶¶ 12, 17.

Due to these incidents Plaintiff has sued Edwards and the Goddard School. Plaintiff alleges that Edwards, a police officer in Orange, Connecticut, "made a false statement" in support of the arrest warrant. Id. ¶ 12. He also alleges that the Goddard School, located in Orange, Connecticut, allowed "School Director Eileen Allaire [to] promote a false statement that led to [Plaintiff's] arrest.[3] Id. ¶ 16. Those are the extent of the allegations against these two defendants.

### 2. Tillotson

Unrelated to the above, Plaintiff and Tillotson live in Chicopee, Massachusetts, where Tillotson serves as a "City of Chicopee[,] Massachusetts Councilor-at-Large." Compl. ¶ 1, 21. Since the "Spring of 2018," Plaintiff has apparently been trying to get the City of Chicopee to "paint a crosswalk onto Front Street" so that patrons have "safe access to the City of Chicopee Main Library." Id. ¶ 21. Plaintiff alleges, without elaborating, that Tillotson has used these efforts "to bait [him] into a phone conversation." Id.

---

[3] The Court guesses, though it cannot be sure, that Plaintiff parked to read his newspaper in the Goddard School's parking lot.

### 3. Crane

To the extent the Court can discern a central narrative in Plaintiff's Complaint, the allegations against Crane are loosely related. That narrative concerns certain real property that Plaintiff lost either through his divorce, Compl. ¶ 29, or through conspiratorial machinations by various defendants, id. ¶¶ 22–23, 28, 43 46; see also id. ¶ 32 (alleging that "major background power brokers . . . have an interest" in Plaintiff "failing to regain title" to the real property).

Turning to the specific allegations against Crane, Plaintiff alleges that Crane is likewise a resident of Chicopee, Massachusetts, id. at 5, and was Plaintiff's "personal friend for over 40 years," id. ¶ 28. One day in October 2014, Plaintiff met Crane outside the "Chicopee Building Department Office." Id. Crane stopped ten feet away from him and "in a HARSH/MEAN voice said 'WARREN SELL THE PROPERTIES!!!'" Id. Before Plaintiff could reply, Crane went into the Building Department Office. Id. According to Plaintiff, Crane's words were "CLEARLY MEANT AS A THREAT," as that was "the first time since [they had] reached adulthood that [they] met up without shaking hands (and often accompanied by a hug)." Id. ¶ 29. As a result of this conduct, Crane "significantly contributed to the ongoing [c]onspiracy to prevent [Plaintiff] from regaining ownership" of his real estate. Id.

### 4. Valet Park

As for Valet Park, Plaintiff alleges that "Valet Park . . . is a company that operates from locations in [the Northern District of New York] including Saratoga County." Compl. ¶ 3. Plaintiff's later-estranged son Jordan Paré "ran the compan[y's] Valet Service offered at the Racino in Saratoga Springs." Id.

At some point, Plaintiff "became aware that Valet Park . . . promoted the Cheating on Income Taxes by its employees by allowing them not to declare a significant part of their income

that was derived from patrons giving Cash for tips." Id. After filing for divorce, Plaintiff spent some time in Saratoga with his son Jordan, during which he "became aware of the level of Tax evasion by the employees including Jordan." Id. ¶ 4.

Plaintiff alleges that through "the encouragement of tax evasion," Valet Park "certainly contributed to my son[']s moral eroision [sic]." Id. This is the extent of the allegations against Valet Park.

### B. Procedural History

Plaintiff filed the Complaint on February 14, 2019. Compl. The Complaint brought claims under 42 U.S.C. §§ 1983, 1985, and 1986, alleging various violations of Plaintiff's constitutional rights. These violations include: (1) "unlawful arrest;" (2) due process violations; (3) the deprivation of Plaintiff's right to enjoy "a Quality of Life unencumbered by the actions and hostilities" of Defendants; (4) the deprivation of Plaintiff's "right to exist in an environment affording [him] Peace and Tranquility;" (5) denial of his "right to own Real Estate Property that [he is] entitled to [own] as a citizen;" and (6) a "civil conspiracy that has dramatically affected[] [his] quality of, and station in life." Compl. ¶ 1.

By mid-April, the Goddard School, Edwards, Tillotson, and Crane had filed their motions to dismiss. Then, on April 26, 2019, because he was having trouble serving various defendants and because he had decided to file a new suit regarding his "unlawful arrest" in Connecticut, Plaintiff filed his own motion to withdraw the case without prejudice. Dkt. No. 25 ("Motion to Withdraw"). Crane, the Goddard School, and Tillotson filed oppositions, objecting to Plaintiff's request that the suit be withdrawn without prejudice. Dkt. Nos. 26 ("Crane Opposition"); 28 ("Goddard Opposition"); 31 ("Tillotson Opposition"). Valet Park subsequently filed its motion to

5

dismiss in which it also opposed the Motion to Withdraw because of Plaintiff's request for withdrawal without prejudice.

Plaintiff then requested to rescind his Motion to Withdraw, stating his intention to file an amended complaint instead. Dkt. No. 42. In a text order dated May 28, 2019, the Court granted Plaintiff's request to rescind his Motion to Withdraw and granted him an extension to respond to the filed motions to dismiss. Dkt. No. 45. After several more extensions, Plaintiff filed responses to the five pending motions, and Valet Park and Edwards filed replies. See Docket. All five motions are now ready for the Court's review.

## III. LEGAL STANDARD

### A. 12(b)(2)

"When a defendant moves to dismiss for lack of personal jurisdiction under [FRCP] 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendants." Micro Fines Recycling Owego, LLC v. Ferrex Eng'g, Ltd., No. 17-CV-1315, 2019 WL 1762889, at *2 (N.D.N.Y. Apr. 22, 2019) (Kahn, J.) (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)). "The court is not limited to considering the four corners of the complaint." In re Hoosick Falls PFOA Cases, No. 19- CV-216, 2020 WL 33409, at *3 (N.D.N.Y. Jan. 2, 2020) (Kahn, J.) (internal quotation marks omitted). "[T]he Court may also rely on submitted affidavits and other supporting materials submitted in relation to the motion." Id. While "the pleadings and affidavits are to be construed in the light most favorable to Plaintiff, and all doubts are to be resolved in Plaintiff's favor," Minholz v. Lockheed Martin Corp., 227 F. Supp. 3d 249, 255 (N.D.N.Y. 2016), a court should "not draw 'argumentative inferences' in the plaintiff's favor," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507

(2d Cir. 1994) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

### B. 12(b)(6)

To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Put another way, a claim is plausible if it is supported by "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. "In assessing whether this standard has been met, courts 'must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[] . . . .'" Charles Ramsey Co., Inc. v. Fabtech-NY LLC, No. 18-CV-546, 2020 WL 352614, at *9 (N.D.N.Y. Jan. 21, 2020) (Kahn, J.) (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)).

## IV. DISCUSSION

The Court addresses each of the separate motions to dismiss, in turn.

### A. The Goddard School

The Goddard School moves for dismissal under FRCP 12(b)(6) for failure to state a claim. Goddard MTD.

Plaintiff has failed to state a Section 1983 claim against the Goddard School. As described above, the extent of the allegations against the Goddard School are that it "allow[ed]

7

School Director Eileen Allaire promote a false statement that led to [Plaintiff's] arrest." Compl. ¶ 16. However, because Section 1983 "defendants cannot be held liable under a theory of respondeat superior," Quezada v. Roy, No. 14-CV-4056, 2015 WL 5547277, at *7 (S.D.N.Y. Sept. 18, 2015), these allegations are insufficient to state a claim against the Goddard School. Additionally, there are no allegations in the Complaint that the Goddard School is a state actor or was acting under color of state law, as required under Section 1983. See Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is . . . required to show state action.").

Nor has Plaintiff stated a claim under Section 1985. "A conspiracy claim under § 1985 has four elements: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" Miller v. Annucci, No. 19-CV-30, 2019 WL 2370295, at *13 (N.D.N.Y. June 5, 2019) (Kahn, J.) (quoting Robinson v. Allstate Ins. Co., 508 F. App'x 7, 9 (2d Cir. 2013)). Moreover, a "claim for conspiracy under Section 1985 'must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" Id. (quoting Robinson, 508 F. App'x at 9. Here, "although Plaintiff purports to bring claims pursuant to Section[] . . . 1985, he has failed to even allege that he is a member of a racial minority or that any of the Defendants discriminated against him on that basis." Zavalidroga v. Hester, No. 19-CV-1412, 2020 WL 210812, at *10 (N.D.N.Y. Jan. 14, 2020). Additionally, "a plaintiff alleging a conspiracy under § 1985 . . . must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed

8

conspiracy." Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999). Here, "[Plaintiff] has not alleged with any particularity the overt acts engaged in by the [Defendants]. Instead, [Plaintiff's] assertions [are] conclusory and vague, and [do] not establish the existence of an agreement among the defendants to deprive [Plaintiff] of his constitutional rights." Id. Therefore, Plaintiff's Section 1985 claim must be dismissed. See Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977) ("[C]omplaints containing only 'conclusory,' 'vague' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed.").

Finally, Plaintiff has also failed to state a claim under Section 1986. A claim under Section 1986 "for neglect to prevent a conspiracy to interfere with civil rights is contingent upon a plaintiff having a valid conspiracy claim under 42 U.S.C. § 1985." Hightower v. Veitch, No. 19-CV-577, 2019 WL 5149973, at *1 n.1 (N.D.N.Y. June 21, 2019) (citing Mian v. Donaldson, Lufkin & Jenrette Securities, 7 F.3d 1085, 1088 (2d Cir. 1993)), report and recommendation adopted, No. 19-CV-577, 2019 WL 4727379 (N.D.N.Y. Sept. 27, 2019). "Plaintiff has not asserted a claim under § 1985 and, therefore, has no claim under § 1986." See id.

Plaintiff's Opposition, which alleges that the Goddard School was never legally entitled to operate and that the School's conduct caused irreparable damage to Plaintiff's reputation, see Resp. to Goddard, does nothing to address these defects.

**B. Edwards**

Edwards moves for dismissal under 12(b)(2), arguing that Plaintiff has failed to meet his burden of establishing that Edwards is subject to personal jurisdiction here in New York. Edwards MTD at 1–6. The Court agrees.

Personal jurisdiction comes in two flavors: general and specific. General jurisdiction is found paradigmatically where an individual is domiciled. Goodyear Dunlop Tires Operations,

S.A. v. Brown, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). By contrast, specific jurisdiction occurs where "the suit . . . aris[es] out of or relat[es] to the defendant's contacts with the forum." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017). A plaintiff need only make a prima facie showing of either general or specific jurisdiction over a defendant. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005). To do so, "a plaintiff must demonstrate a statutory basis for personal jurisdiction over the defendant, and that the Court's exercise of jurisdiction over the defendant is in accordance with constitutional due process principles." Minholz v. Lockheed Martin Corp., 227 F. Supp. 3d 249, 256 (N.D.N.Y. 2016). "A prima facie showing of jurisdiction means . . . that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (internal quotation marks omitted).

Here, Plaintiff has failed to make a prima facie showing of either general or specific jurisdiction. The sum of Plaintiff's allegations against Edwards are that he lives in Connecticut, Compl. at 3, and that he "made a false statement in order for the Derby Connecticut Superior Court to issue" a warrant for Plaintiff's arrest, id. ¶ 12. None of these allegations suggest any contacts, minimum or otherwise, in the State of New York, nor that Edwards is domiciled in New York. They are thus insufficient to satisfy either of New York's jurisdictional statutes, see N.Y. C.P.L.R. 301, 302; see also Spiegel v. Schulmann, 604 F.3d 72, 76 (2d Cir. 2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located."), or the standards of constitutional due process, see Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen, No. 12-CV-6390, 2013 WL 1775440, at *5 (S.D.N.Y. Apr. 25, 2013)

("The Due Process Clause protects an individual's liberty interest in not being subject to [jurisdiction in] a forum with which he has established no meaningful contacts, ties, or relations."). Additionally, Edwards has filed an affidavit in which he states that he does not live in New York, does not work in New York, does not own property in New York, was not served with process in New York, and only ever interacted with Plaintiff in Connecticut. Dkt. No. 15-2 ("Edwards Affidavit"). Since Plaintiff has failed to rebut this evidence, see Response to Edwards (largely restating the allegations in the Complaint), the Court grant's Edwards' motion to dismiss for lack of personal jurisdiction.

### C. Tillotson

Tillotson moves for dismissal under 12(b)(2) and 12(b)(6). Tillotson MTD. The Court grants Tillotson's motion on both bases.

Besides alleging that Tillotson lives in Chicopee, Massachusetts, Compl. at 4, the sum total of the allegations against Tillotson are as follows:

> James K. Tillotson is a City of Chicopee Massachusetts Councilor-at-Large that has used my efforts since the Spring of 2018 . . . to have at least one crosswalk installed for safe access to the City of Chicopee Main Library on Front Street as an attempt to bait me into a phone conversation. As of the dating of this legal document the health and lives of the patrons visiting the library who need to cross Front Street are still needlessly at risk. My hope is that I can impress upon this Federal Court to Order that the City of Chicopee paint a crosswalk onto Front Street in the interest of safety for pedestrians and vehicle operators.

Id. ¶ 21. These allegations are, on their face, insufficient to meet Plaintiff's burden of establishing personal jurisdiction over Tillotson in New York. There is no indication that Tillotson is domiciled in New York (quite the opposite, in fact), nor allegations of a single contact with New York. Therefore, the Court grants Tillotson's 12(b)(2) motion.

Even were Tillotson subject to personal jurisdiction here in New York, the Court would dismiss Plaintiff's Complaint under 12(b)(6) for failure to state a claim. The Complaint's

conclusory allegations fail to plausibly suggest that Tillotson violated any federal right of Plaintiff's while acting under the color of state law. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) ("To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law.") (internal quotation marks omitted). Additionally, "Plaintiff fails to allege the requisite elements of a conspiracy under § 1985" and "[t]he incomplete and conclusory allegations of conspiracy are insufficient to avoid dismissal." K.W. ex rel. Brown v. City of New York, 275 F.R.D. 393, 400 (E.D.N.Y. 2011). Finally, "since [P]laintiff's allegation of conspiracy under § 1985 is insufficient, [his] derivative § 1986 claim [also] fails." Id.

### D. Crane

Crane likewise moves to dismiss under 12(b)(2) and 12(b)(6), Crane MTD, and the Court grants the motion on both grounds.

The Complaint alleges that Crane lives in Chicopee, Massachusetts, Compl. at 5, and all of the conduct ascribed to him in the Complaint took place in Massachusetts, Compl. ¶¶ 28, 29. Crane also submitted an affidavit stating that he does not, and never has, lived in New York, was not served in New York, owns no businesses or property in New York, and does not consent to jurisdiction in New York. Dkt. No. 21-1 ("Crane Affidavit"). Plaintiff's Opposition does nothing to rebut the affidavit, merely repeating that Crane threatened Plaintiff in the Chicopee, Massachusetts City Hall, and adding additional confusing and unrelated statements that Plaintiff met with the FBI about his properties. See Response to Crane. Therefore, for reasons similar to those described above in the sections on Edwards and Tillotson, the Court does not have personal jurisdiction over Crane and grants Crane's 12(b)(2) motion.

Additionally, the Court also grants Crane's 12(b)(6) motion because there are no allegations in the Complaint that Crane acted under color of state law or that he violated any of Plaintiff's federal rights. Moreover, the allegations of conspiracy are vague and conclusory, Compl. ¶ 29 ("As a result of his conduct Andrew Crane has significantly contributed to the ongoing Conspiracy to prevent me from regaining ownership of the Real Estate that was listed in The Commonwealth of Massachusetts Hampden County Family & Probate Court Divorce Case No. 11D18920111 and has violated my Civil Rights I am entitled to as a Citizen of the United States of America!" [sic throughout]), and therefore must be dismissed, see San Filippo v. U.S. Tr. Co. of New York, 737 F.2d 246, 256 (2d Cir. 1984) ("[C]onclusory allegations of conspiracy are insufficient to survive . . . a 12(b)(6) motion for dismissal.").

### E. Valet Park

Valet Park moves to dismiss under 12(b)(5) and 12(b)(6). The Court grants Valet Park's 12(b)(6) motion and, for that reason, has no need to consider the 12(b)(5) grounds for dismissal.

As described above, Plaintiff alleges that Valet Park "contributed to [his] son's moral eroision [sic]" by "encourage[ing] . . . tax evasion." Compl. ¶ 4. These allegations fail to plausibly suggest that Valet Park violated Plaintiff's federal rights while acting under the color of state law, as required to state a violation of Section 1983. See Vega, 801 F.3d at 87–88. Nor do these allegations state a claim under Section 1985. See Mass v. McClenahan, 893 F. Supp. 225, 231 (S.D.N.Y.1995) ("Absent specific factual allegations as to the participation of a particular defendant in [a] conspiracy, plaintiff's § 1985[] claim cannot survive . . . ."). And, because Plaintiff's Section 1985 claim fails, his Section 1986 claim must as well. See Forjone v. Dep't of Motor Vehicles, No. 19-CV-578, 2019 WL 5684437, at *4 (N.D.N.Y. Nov. 1, 2019) ("[A]

13

§ 1986 claim must be predicated upon a valid § 1985 claim."). For these reasons, the Court grants Valet Park's 12(b)(6) motion.

### F. Prejudice

The Goddard School, Edwards, and Valet Park request dismissal with prejudice. Goddard MTD at 6; Edwards MTD at 6; Valet Park MTD at 1. But "[o]rdinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Harris v. Harris, No. 17-CV-261, 2017 WL 2633529, at *1 (N.D.N.Y. June 16, 2017) (quoting Branum v. Clark, 927 F.2d 698, 704–05 (2nd Cir. 1991)). The Court recognizes that many of Plaintiff's claims seem unlikely to form a basis for legal relief, but given Plaintiff's pro se status and the directive that leave to amend "should [be] freely give[n]," Fed. R. Civ. P. 15(a), the Court declines to dismiss the Complaint with prejudice.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the motions to dismiss filed by the Goddard School (Dkt. No. 13), Edwards (Dkt. No. 15), Tillotson (Dkt. No. 18), Crane (Dkt. No. 21), and Valet Park (Dkt. No. 38) are **GRANTED** and Plaintiff's claims against those defendants are **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk shall terminate those defendants from the docket; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED: January 30, 2020
Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge